IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| KYLE IRVIN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Case No: 07 C 1207 |
| | ) | |
| CITY OF CHICAGO, Chicago Police Officers | ) | Judge Virginia M. Kendall |
| DION BOYD, CEDRICK PARKS, CARL | ) | |
| WITHERSPOON, and OTHER UNKNOWN | ) | |
| CHICAGO POLICE OFFICERS, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Kyle Irvin ("Irvin") brings this action against the City of Chicago (the "City"), Officer Dion Boyd ("Boyd"), Officer Cedrick Parks ("Parks"), Officer Carl Witherspoon ("Witherspoon"), and other unknown Chicago Police Officers. Before this Court is defendant Parks's Motion to Dismiss. For the reasons stated herein, defendant Parks's Motion to Dismiss is Granted.

**Plaintiff's Allegations**

Irvin alleges that he was arrested by members of the Chicago Police Department on March 18, 2005. Following his arrest, Irvin was taken to Area Two police headquarters, where he was detained for over 48 hours in a small interrogation room with his hands shackled to a bar on the wall. During this time, Irvin was subjected to interrogation regarding the July 19, 2004 murder of Sherman Freeny ("Freeny"). Irvin claims that during his 48-hour detention he was only sporadically offered food and was permitted to leave the interrogation room only at irregular intervals to use the bathroom. Subsequently, Irvin was charged with Freeny's murder and was incarcerated at the Cook County Jail.

Irvin alleges that he was arrested without probable cause and that, during his time at Area Two headquarters, his repeated requests for access to an attorney were denied. Irvin further alleges that, because he was held with his hand shackled to a bar on the wall, and because he was not provied with any bedding, it was impossible for him to get any restful sleep during his detention there.

Irvin alleges that he was thereafter charged with Freeny's murder in spite of fact that he did not confess and that there was no probable cause for the charge. He claims that, in order to build a false case against him, the defendants fabricated inculpatory evidence and destroyed exculpatory evidence. Irvin also alleges that the defendants coached and manipulated witnesses and that Boyd, as a complaining witness, testified falsely at Irvin's criminal trial.

Irvin was acquitted of Freeny's murder in March of 2006. Irvin was incarcerated for the majority of the time between his arrest in March 2005 and the acquittal in March 2006. He alleges that – as an innocent young man housed among violent criminals – he was forced unncecessarily to endure harsh and brutal conditions.

## DISCUSSION

**I.      Standard**

The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test the legal, not factual, sufficiency of a complaint. *See Szabo v. Bridgeport Machs., Inc.*, 249 F.3d 672, 675-76 (7th Cir. 2001). In general, a complaint filed in federal court need only provide enough detail to give the defendant fair notice of what the claim is and the grounds upon which it rests and the allegations therein must demonstrate that the plaintiff's entitlement to relief is plausible, rather than merely speculative. *Lang v. TCF Nat'l Bank*, No. 07-1415, 2007 U.S. App. LEXIS 22588, *5 (7th Cir. Sep. 20, 2007) (citing *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1964, 167 L. Ed. 2d 929 (2007)

2

(additional citations omitted)). Although "complaints do not have to anticipate affirmative defenses to survive a motion to dismiss, [an] exception occurs where . . . the allegations of the complaint itself set forth everything necessary to satisfy the affirmative defense, such as when a complaint plainly reveals that an action is untimely under the governing statute of limitations." *United States v. Lewis*, 411 F.3d 838, 842 (7th Cir. 2005) (internal citation omitted).

## II. Plaintiff's Claims Against Defendant Cedrick Parks are Time-Barred and are not Saved by the Misnomer Statute.

Irvin's claims in this case arise out of his arrest on March 18, 2005. Irvin filed his original Complaint in this Court on March 1, 2007. That complaint did not name Cedrick Parks as a defendant but instead named a "Chicago Police Officer Parks." Subsequently, on March 14, 2007, Irvin filed an Amended Complaint that identified "Chicago Police Officer Parks" as *Earl* Parks. It was not until June 12, 2007 that Irvin filed a Second Amended Complaint that identified *Cedrick* Parks as a defendant for the first time. In his Motion to Dismiss, Parks argues that the claims against him should be dismissed because the two-year statute of limitations had run before Irvin filed the Second Amended Complaint.[1] Accordingly, prima facie, Irvin's suit is time-barred as against Cedrick Parks.

Irvin responds, however, that the Illinois misnomer statute applies in this case as an exception to the statute of limitations. Under that statute, the "[m]isnomer of a party is not a ground for dismissal but the name of any party may be corrected at any time, before or after judgment, on motion, upon any terms and proof that the court requires." 735 ILCS 5/2-401(b). Where "a plaintiff's timely-filed original complaint merely misnames the real party in interest and the

---

[1]State law determines the statute of limitations for § 1983 suits; in Illinois, that period is two years. *Gosnell v. City of Troy*, 59 F.3d 654, 656 (7th Cir. 1995) (citing Kalimara v. *Illinois Dep't of Corrections*, 879 F.2d 276 (7th Cir. 1989)).

provisions of section 2-401(b) are applicable to the misnomer, the expiration of the statute of limitations prior to an amendment of the complaint and a service of process upon the defednant will not bar the plaintiff's right of action." *Schryver v. Eriksen*, 627 N.E.2d 291, 292-93 (Ill. App. Ct. 1993).

The misnomer rule is a narrow one, however, and Illinois courts have "consistently distinguished the misnomer rule from rules applicable to a mistake in identity." *Arendt v. Vetta Sports*, 99 F.3d 231, 234 (7th Cir. 1996) (citing *Barbour v. Fred Berglund & Sons, Inc.*, 567 N.E.2d 509, 511-12 (Ill. App. Ct. 1990)). Mistaken identity occurs when the wrong person is named and served. *Id.* (citing *Shaifer v. Folino*, 650 N.E.2d 594, 597 (Ill. App. Ct. 1995)). "A misnomer occurs where the plaintiff brings an action and serves summons upon the party *intended* to be made the defendant, thus giving *actual notice* of the lawsuit *to the real party in interest*, but the process and complaint do not refer to the person by his correct name." *Id.* (emphasis in original). In other words, a "misnomer is nothing more than an error in the drafting of the complaint, and it ought to be corrigible by amendment, whereas in a case of mistaken identity the plaintiff has sued the wrong person, and he cannot be allowed by doing that to prevent the right person from pleading the statute of limitations – otherwise, as we have noted, the plaintiff could name 'John Doe' in the complaint and take the next twenty years to find out who the actual tortfeasor was." *Athmer v. CEI Equipment Co., Inc.*, 121 F.3d 294, 296 (7th Cir. 1997).

Irvin cites a number of cases standing for the proposition that the misnomer statute applies when the plaintiff sues the real party in interest but uses the wrong name. Unfortunately for Irvin, this is not a case wherein the complaint was served upon the real party in interest but was "burdened by problems of nomenclature." *Diaz v. Shallbetter*, 984 F.2d 850, 853-54 (7th Cir. 1993) (citing *Ellis v. Borisek*, 580 N.E.2d 899, 901 (Ill. App. Ct. 1991) for the proposition that Illinois "does not

care whether the complaint gets defendant's name right. If the right person receives service promptly, the complaint is timely despite the gaffe."). In this case, Irvin did not sue and serve Cedrick Parks. Instead, Irvin sued and served the wrong party: *Earl* Parks, a Chicago Police Officer who is not Cedrick Parks.

Irvin suggests, without providing any support for the notion, that this case is akin to one in which the correct party was served under the wrong name because all Chicago Police Officers are served at the same address – the Chicago Police Department's ("CPD") Office of Legal Affairs. This is an allusion to the case in which two parties have appointed the same agent for service of process and that agent receives a complaint that names one of the parties but clearly seeks relief from the other. In such a case, the proper party – through its agent – might have actual notice of the suit against it. *See Peterson v. Sealed Air Corp.*, 902 F.2d 1232, 1237 (7th Cir. 1990) (in a hypothetical case in which General Motors and Ford shared the same agent for service of process, "[a] complaint naming GM that went on and on about the plaintiff's Thunderbird would alert Ford's agent that Ford was the right party; a complaint mentioning a Corvette would not."). Irvin essentially suggests that his intent to seek relief from Cedrick Parks should have been clear to the CPD's Office of Legal Affairs. Parks responds only that "plaintiff . . . was given exactly what he asked for and that [the CPD's system for facilitating service] worked" inasmuch as Irvin named Earl Parks and that is who the CPD served. (Parks's Reply Mem. at p. 5.)

This is not a case in which the Amended Complaint named "Earl Parks" as a defendant while so clearly seeking relief from "Cedrick Parks" that the CPD's Office of Legal Affairs was on notice that the suit was one against Cedrick Parks. Irvin's original Complaint named "Officer Parks" as a defendant and indicated that the "Officer Parks" at issue was the one who was, "partners with Detective Boyd on or about March 18, 2005." Then, two weeks later, Irvin named an actual Chicago

5

Police Officer, Earl Parks, in an Amended Complaint that eliminated the allegation that the Officer Parks in question was partners with Detective Boyd. The Amended Complaint, by way of providing identifying information about the officer defendants, alleged only that Dion Boyd, Earl Parks and Carl Witherspoon were working together on the Freeny murder investigation. Under such circumstances, Irvin cannot be heard to argue that one line in his original Complaint is more probative of whom he intended to sue than the person he actually *named* as a defendant in the Amended Complaint. *See Shaifer v. Folino*, 650 N.E.2d 594, 598 (Ill. App. Ct. 1995) ("the party named by the plaintiff in the complaint is the most probative evidence of whom the plaintiff intended to sue.").[2] Accordingly, the Court finds that the misnomer statute does not apply in this case.

---

[2] Irvin argues this Court should find that the misnomer statute applies under the reasoning in *Shaifer*. The court in *Shaifer* found that the misnomer statute applied in a case in which the plaintiffs named in their complaint a *Domenico* Folino – who actually existed – instead of the correct defendant, *Dominic* Folino because the record demonstrated that the right defendant was served under the wrong name and had *actual notice* of the complaint before the statute of limitations expired:
> The record demonstrates, moreover, that Dominic was served with process, albeit under the wrong name, further persuading us that this is a case of misnomer. Dominic testified at his deposition that he saw the complaint and summons at his home [where he lived with his father, Domenico, and his mother, Rosa] and that his parents at some point informed him that plaintiffs were suing him and that the documents [the process server] delivered were for him. [The process server] testified that Dominic's mother recieved the documents and stated they were for her son, prompting [the process server] to record "Mother Rosa" as the individual to whom the process papers were given. In light of this evidence, it is wholly reasonable to assume that Rosa timely informed Dominic that a complaint and summons had been served upon him by plaintiffs. Indeed, Dominic testified at his depoisition that upon learning of the lawsuit, he told his parents he would "let the insurance company handle it," and he admitted speaking with someone from the insurance company about the accident, to whom he readily acknowledged his involvement. Under these circumstances, there appears to be little question that the proper party in this case, namely, Dominic, had actual notice of the complaint that plaintiffs had filed against him and thus had notice of the need to respond. As stated, a misnomer occurs where the plaintiff brings an action and serves summons upon the party intended to be made the defendant, thus giving actual notice of the lawsuit to the real party in interest, but the process and complaint to not refer to the person by his correct name. That is precisely what occurred here.

*Shaifer*, 650 N.E.2d at 716-17. This case is not on all fours with *Shaifer*. Indeed, the record does not contain any suggestion that Cedrick Parks had actual notice of the complaint in this case before the expiration of the statute of limitations. Instead, Irvin argues only that Cedrick Parks had actual notice of the *allegations* against him because he was served by the CPD's Office of Professional Standards with a copy of Irvin's allegations against him on September 22, 2005. That is not the same as notice of the complaint in this case.

6

**III.    Relation Back Under Rule 15 Does Not Otherwise Rescue Irvin's Claims Against Cedrick Parks.**

The parties do not address whether the Second Amended Complaint relates back to the date of the Original Complaint under Fed. R. Civ. P. 15(c)(3). Under Rule 15(c)(3), an amended complaint naming a new party or changing the name of a party relates back to an original complaint if the amendment arose out of the same conduct, transaction or occurrence as the original pleading and, within the period allowed for service of the summons and complaint, the new party named had notice of the institution of the action such that it would not be prejudiced and knew or should have known that absent a mistake by the plaintiff, the suit would have been brought against it. Rule 15 (c)(1) also provides that a pleading will relate back if relation back is permitted by the law that provides the statute of limitations.

   A.    Rule 15(c)(3).

There is no question that the Second Amended Complaint arises out of the same conduct, transactions, or occurrences as the Original Complaint. However, the Court cannot ascertain whether Cedrick Parks received notice of the action within the time allowed for service of the summons and complaint under Fed. R. Civ. P. 4(m) – within 120 days after the complaint was filed, or on or before June 29, 2007. The record is clear that the Second Amended Complaint was filed on June 12, 2007 and that alias summons *issued* as to Cedrick Parks on that same date – within the time allowed under Rule 4(m). But the Court's docket does not reflect a return of that alias summons and there is nothing else in the record that would indicate when Cedrick Parks was actually served with the summons and complaint. In his reply brief in favor of the Motion to Dismiss, Parks asserts that

---

Indeed, it would have been perfectly reasonable Cedrick Parks to assume – after having responded to those allegations two days later and not having heard anything about any federal lawsuit before the expiration of the statute of limitations – that he had not been and was not going to be made a defendant in any federal lawsuit related to Irvin's allegations against him.

"undersigned counsel did not appear for Cedrick Parks until August 8, 2007, after Parks was actually served with the second amended complaint," but he does not state *when* he was actually served with the Second Amended Complaint. (Reply Mem. at p. 6.) But it is the plaintiff's burden to demonstrate that an amendment relates back to a timely-filed complaint. *Farrell v. McDonough*, 966 F.2d 279, 282-83 (7th Cir. 1992). Accordingly, because Plaintiff has not demonstrated that Cedrick Parks was actually served within the time allowed under Rule 4(m), this Court can only determine that the Second Amended Complaint does not relate back under Rule 15(c)(3).

    B.    <u>Rule 15(c)(1).</u>

The Second Amended Complaint may still relate back to the date of the Original Complaint if relation back is permitted by the law that provides the statute of limitations in this case. As explained above, the Court has already determined that this is a case of mistaken identity and not a case of misnomer as Irvin insists. Whether an amended pleading naming the proper party relates back to a pleading reflecting a mistaken identity is governed, in Illinois, by 735 ILCS 5/2-616(d), which provides that relation back is permitted when:

> (1) the time prescribed or limited had not expired when the original action was commenced; (2) the person, within the time that the action might have been brought or the right asserted against him or her plus the time for service permitted under Supreme Court Rule 103(b), recieved such notice of the commencement of the action that the person will not be prejudiced in maintaining a defense on the merits and knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against him or her; and (3) it appears from the original and amended pleadings that the cause of action asserted in the amended pleading grew out of the same transaction or occurrence set up in the original pleading, even though . . . the person was not named originally as a defendant.

There is no question either that (1) the Original Complaint was filed before the statute of limitations expired; or that (2) the Second Amended Complaint grew out of the same transaction or occurrence set up in the original pleading. Accordingly, the Second Amended Complaint will relate back if

8

Cedrick Parks received notice of the commencement of this action within the two-year limitations period or the time for reasonably diligent service as allowed by Rule 103(b) and if he knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against him. *Polites v. U.S. Bank Nat'l Assoc.*, 836 N.E.2d 133,140 (Ill. App. Ct. 2005).

Irvin does not argue that Cedrick Parks had notice of the commencement of *this action* – as opposed to the earlier allegations to which he responded – before the expiration of the statute of limitations. If the Second Amended Complaint is to relate back, then, it must be because he had notice within the time for reasonably diligent service under Illinois Supreme Court Rule 103(b). The Illinois Supreme Court has provided several factors to determine a plaintiff's diligence in efforts to serve a defendant under Rule 103(b); those factors include:

> (1) the defendant's actual notice or knowledge of the suit; (2) lack of prejudice to the defendant; (3) the length of time used to obtain serivce of process; (4) the plaintiff's activities; (5) the plaintiff's knowledge of the defendant's location; (6) the ease of ascertaining the defendant's location; (7) special circumstances that affected the plaintiff's efforts; and (8) actual service on the defendant

*Polites*, 836 N.E.2d at 141. The test for diligence under Rule 103(b) is an objective one. *Kole v. Brubaker*, 759 N.E.2d 129, 134 (Ill. App. Ct. 2001).

In this case, Parks has not argued that he will suffer any prejudice should he remain in the case. Indeed, his counsel – who is also counsel for the other individual defendants – has been fully involved from the outset of this case. Nor does it appear that Irvin used an excessively long time to obtain service of process. The Original Complaint was filed on March 1, 2007 and was amended two weeks later, on March 14, 2007. Counsel for the individual defendants appeared at the beginning of May 2007 and Irvin received initial disclosures on May 29, 2007 whereupon, he asserts as an Officer of the Court, he learned that the defendant Earl Parks should have been Cedrick Parks.

9

Shortly thereafter, on June 6, 2007, Irvin filed a motion for leave to file a Second Amended Complaint in order to substitute Cedrick Parks for Earl Parks. That motion was granted on June 11, 2007. The next day, Irvin filed the Second Amended Complaint and issued alias summons to Cedrick Parks. Under these circumstances, the Court finds that Irvin was reasonably diligent in attempting to effect service upon Cedrick Parks.

However, Irvin has not demonstrated – indeed, he has not even argued – that Cedrick Parks knew or should have known that, but for a mistake concerning the identity of the proper party, this action would have been brought against him originally.[3] Accordingly, Irvin has failed to meet his burden of demonstrating that the Second Amended Complaint relates back under Rule 15(c)(1). *Farrell*, 966 F.2d at 282-83.

## CONCLUSION

For the reasons stated herein, the Motion to Dismiss is Granted.

So ordered.

_____
Virginia M. Kendall, United States District Judge
Northern District of Illinois

Date: October 15, 2007

---

[3] As discussed above, Irvin does argue that Cedrick Parks had actual notice of allegations that Irvin made in 2005, but that is not the same as actual notice of this action.